IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 26, 2009

Charles R. Fulbruge III
Clerk

No. 08-60379
Summary Calendar

BETTY ANN CASEY

Plaintiff - Appellant

v.

LIBERTY MUTUAL INSURANCE COMPANY; JOHN DOES 1-3

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi, Jackson
USDC No. 3:05-CV-98

Before KING, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:[*]

Betty Ann Casey appeals the district court's grant of summary judgment in favor of Liberty Mutual Insurance Company, dismissing her claim for the alleged bad faith delay in paying her workers' compensation death benefits. Mrs. Casey's husband, Samuel Casey, died in an auto accident that occurred during the scope of his employment. Liberty Mutual paid no benefits to Mrs. Casey while it waited for the results of Mr. Casey's toxicology report and for an

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

order from the Mississippi Workers' Compensation Commission permitting a lump-sum payment of benefits; however, Liberty Mutual immediately paid benefits to Mrs. Casey when it was informed of her financial hardship. Because Liberty Mutual never, in fact, denied Mrs. Casey's claim and because the delay in payment was due to an investigation that Liberty Mutual had a duty to carry out, we affirm the district court's grant of summary judgment.

## I. Factual And Procedural Background

The facts in this case are undisputed. On June 7, 2004, Mr. Casey was driving a company truck on a two-lane state highway when he swerved into oncoming traffic and collided head-on with a semi-truck. He died as a result.[1] The next day, his employer, Rapad Drilling and Well Service ("Rapad"), notified its workers' compensation carrier, Liberty Mutual Insurance Company ("Liberty Mutual"), of Mr. Casey's death. Liberty Mutual's claims adjuster, Wesley Jackson, initiated an investigation to determine whether Mrs. Casey's resulting workers' compensation death benefits claim was compensable; he was joined by field investigator Todd Lafferty. Lafferty informed Jackson that the toxicology report, which would reveal Mr. Casey's blood–alcohol level at the time of the accident, would be unobtainable until the Mississippi Highway Patrol finished its investigation.

Liberty Mutual subsequently attempted to obtain the results of the toxicology report. On June 23, 2004, Jackson called Officer Ronnie Rayburn of the Mississippi Highway Patrol to inquire about the toxicology report, and Officer Rayburn informed Jackson that the state crime lab would not have the

---

[1] The parties do not dispute the fact that Mr. Casey was acting within the scope of his employment while driving the truck.

report ready for another month. On August 2, 2004, Jackson again called Officer Rayburn and left a message for him. Receiving no response to his message, Jackson called once more on August 9, 2004, only to leave a second message for Officer Rayburn.

Meanwhile, Mrs. Casey obtained the legal services of Len Melvin, who contacted Jackson on August 25, 2004, and informed Jackson that Mrs. Casey would be seeking a lump-sum payment of her benefits. Jackson informed Melvin that Liberty Mutual was still waiting on the results of Mr. Casey's toxicology report.

On September 16, 2004, Jackson noted that the highway patrol had yet to call him back, so, on September 24, 2004, Lafferty traveled to the highway patrol's office and left his card for Officer Rayburn asking the officer to call Lafferty back. Officer Rayburn called Lafferty on October 6 and confirmed that Mr. Casey's toxicology report was negative for any trace of alcohol.

That same day, Melvin filed a petition to controvert the workers' compensation claim on behalf of Mrs. Casey with the Mississippi Workers' Compensation Commission (the "MWCC"). When Jackson called Melvin on October 7, 2004, to inform him that Liberty Mutual obtained the toxicology report and that Mrs. Casey's claim was compensable, Melvin told Jackson that he had filed the petition to controvert. Liberty Mutual received the petition on October 13, 2004, and forwarded the document to its counsel. In answering the petition to controvert, Liberty Mutual admitted compensability.

On December 8, 2004, Liberty Mutual received a letter from Melvin stating that Mrs. Casey would be seeking a lump-sum payment of her benefits. Liberty Mutual informed Rapad a week later that it was waiting for the MWCC to issue an order approving the lump-sum payment to Mrs. Casey.

Before that order, however, Mrs. Casey filed the present law suit on January 14, 2005. On February 4, 2005, Melvin sent a letter to Liberty Mutual's counsel stating that Mrs. Casey was "experiencing extreme financial difficulties" and requesting immediate compensation. Six days later, Liberty Mutual paid $11,938.85 to Mrs. Casey, representing the bi-weekly benefits that had accrued up to that date. Finally, on April 5, 2005, the MWCC issued its final order authorizing the payment of lump-sum benefits to Mrs. Casey, and Liberty Mutual paid those benefits to Mrs. Casey on April 12, 2005.

After reviewing these facts, the district court concluded that Liberty Mutual's conduct did not rise to the level of gross negligence necessary to support Mrs. Casey's claim of bad faith. The court reasoned that "[t]he alleged misconduct occurred while the claim was being investigated and litigated pursuant to the Workers' Compensation Act and the rules of the [MWCC]" and also that "Liberty [Mutual] accepted Mrs. Casey's claim as compensable and paid the benefits due." Thus, it granted Liberty Mutual's motion for summary judgment and dismissed Mrs. Casey's claim. Mrs. Casey filed timely notice of appeal. In it, she argues that Liberty Mutual delayed payment of her benefits in bad faith by failing to begin bi-weekly payments within fourteen days of being notified of Mr. Casey's death and by conducting an unreasonably long investigation into the compensability of her claim.

## II. Standard Of Review

We review a grant of summary judgment de novo, viewing all evidence in the light most favorable to the nonmovant and drawing all reasonable inferences in the nonmovant's favor. See Essinger v. Liberty Mut. Fire Ins. Co., 529 F.3d 264, 269 (5th Cir. 2008). Summary judgment is proper when the evidence

reflects "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

### III. Discussion

Under Mississippi law, workers' compensation is the exclusive remedy for an injury occurring in the course of employment. MISS. CODE ANN. § 71-3-9. But this provision does not bar the independent, intentional tort for bad faith refusal to honor an insurance contract obligation. Rogers v. Hartford Accident & Indem. Co., 133 F.3d 309, 312 (5th Cir. 1998). To prove this bad faith claim, a plaintiff must show: "(1) a contract of workers' compensation insurance existed between the defendant and the plaintiff's employer; (2) the carrier denied the plaintiff's compensable workers' compensation claim without a legitimate or arguable reason; and (3) the denial of benefits constitutes a willful and intentional or malicious wrong." Id.[2] There is no question that a valid contract of workers' compensation existed here; the issue turns on whether Liberty Mutual had a legitimate or arguable reason for delaying payment of Mrs. Casey's benefits and whether such delay was a willful or malicious wrong.

As Mrs. Casey argues, Mississippi workers' compensation carriers are required to pay the first installment of compensation within fourteen days of receiving notice of the claim. See MISS. CODE ANN. § 71-3-37(2) ("The first installment of compensation shall become due on the fourteenth day (14th) after the employer has notice . . . of injury or death . . . ."). But carriers also have a duty "to fully investigate all relevant facts" surrounding a claim, Caldwell v. Alfa Ins. Co., 686 So. 2d 1092, 1099 (Miss. 1996), and some delay in payment is

---

[2] The third requirement has similarly been described as showing that a carrier "acted with willful, malicious, gross negligence, or reckless disregard for the rights of the claimant." Pilate v. Am. Federated Ins. Co., 865 So. 2d 387, 391 (Miss. Ct. App. 2004).

permitted while the carrier satisfies this duty despite the fourteen-day requirement, see, e.g., id. at 1098 (holding that a 103-day delay in payment did not amount to bad faith because the carrier "gave a reasonable explanation for the delay in payment: [it was] continuing [its] investigation"); Pilate, 865 So. 2d at 400–01 (permitting a year-long delay in paying workers' compensation benefits and stating that "[the carrier]'s explanation of its investigation was sufficient to determine that neither [its] nor [its adjuster]'s conduct rose to the level of gross negligence or an independent tort"). This investigation is particularly important in a case such as this, as intoxication of the employee may completely bar the payment of workers' compensation. See MISS. CODE ANN. § 71-3-7 ("No compensation shall be payable if the intoxication of the employee was the proximate cause of the injury . . . ."). Finally, payment of benefits in the form of a lump sum instead of bi-weekly payments must be approved by order of the MWCC. See MISS. CODE ANN. § 71-3-37(10) ("Whenever the commission determines that it is for the best interests of a person entitled to compensation, the liability of the employer for compensation . . . may be discharged by the payment of a lump sum equal to the present value of future compensation payments . . . ." (emphasis added)).

In Caldwell, the Mississippi Supreme Court emphasized that the required showing that a carrier lack an arguable reason for delaying payment and that the carrier do so willfully, maliciously, or with gross negligence is difficult to meet when the carrier never, in fact, denies the claim and the delay occurs as a result of the carrier's investigation of the claim. There, the court stated:

> Having established that no denial of the . . . claim occurred; that the claim was eventually paid; and the duty imposed upon [the carrier]

by law to fully investigate all relevant facts, this Court cannot conclude that [the carrier]'s conduct, when viewed in the light most favorable to [the claimant], rose to the level of gross negligence or an independent tort. Considering when payment was made, the most that can be said regarding [the carrier]'s handling of the . . . claim is that [the carrier] was negligent, if that. We hold that the trial court correctly . . . grant[ed] summary judgment to [the carrier].

Caldwell, 686 So. 2d at 1099.

Here, Liberty Mutual's delay in paying Mrs. Casey's benefits was a result of its awaiting the results of Mr. Casey's toxicology report pursuant to its claim investigation and its awaiting the order from the MWCC approving the lump-sum payment that Mrs. Casey sought. When it received the results of the report, Liberty Mutual deemed Mrs. Casey's claims fully compensable, but at that moment Mrs. Casey had filed her petition to controvert and sought a lump-sum payment of her benefits. Liberty Mutual then awaited the MWCC's order approving the lump-sum payment. When Mrs. Casey's financial difficulties became known to Liberty Mutual, it immediately paid to Mrs. Casey the bi-weekly benefits that had accrued up to that time. At no point did Liberty Mutual deny Mrs. Casey's claims. Finally, Liberty Mutual paid the balance of Mrs. Casey's benefits when the MWCC issued its order approving the lump-sum payment. As in Caldwell, these facts suggest that Liberty Mutual had an arguable reason to delay payment and do not suggest that Liberty Mutual's doing so "rose to the level of gross negligence or an independent tort." See id. Mrs. Casey's claim "is that [the carrier] was negligent, if that," see id., and that level of negligence, without more, cannot meet the standards required to present a claim of bad faith refusal to honor an insurance obligation.

Mrs. Casey presses that this case is similar to that in Rogers, where we reversed a district court's grant of summary judgment because the facts did present a genuine issue of material fact concerning whether the carrier delayed payment of workers' compensation benefits in bad faith. The comparison is unavailing, however. In Rogers, a service-station employee was injured while performing work for the neighboring gas station. 133 F.3d at 310. Both the service station and the gas station had policies with the same workers' compensation carrier. Id. Nonetheless, the carrier initially denied the employee's claim under the service station's policy by arguing that the employee was not acting in the scope of his employment, but it paid the claim, after a year's delay, under the gas station's policy. Id. at 311. We held that the carrier had no legitimate or arguable reason for the claim's initial refusal and resulting delay because the carrier was required to pay benefits under either of the policies. See id. at 314 ("For our purposes, the . . . employment issue is irrelevant. The issue in this case is whether [the carrier], as the indisputably responsible party to pay benefits, had a legitimate or arguable reason to deny paying [the claimant] benefits . . . ."). Unlike Rogers, in this case Liberty Mutual never denied Mrs. Casey's claim. And Liberty Mutual had legitimate purposes for its delays: first, had the toxicology report been positive, then workers' compensation benefits may have been unavailable to Mrs. Casey under Mississippi law. And second, Mississippi law requires that the MWCC approve paying workers' compensation benefits in the form of a lump sum.

Liberty Mutual's delay in paying Mrs. Casey resulted from its investigation surrounding the facts of her claim and from its waiting for the MWCC to approve the lump-sum benefits payment. Perhaps Liberty Mutual

could have investigated the claim in a way that might have resulted in prompter payment of Mrs. Casey's benefits, but we do not review such a case through the perfect lenses of hindsight. The standard, instead, is whether Liberty Mutual lacked a legitimate or arguable reason for the delay and that such delay amounted to a willful or malicious wrong. The facts here do not present a genuine issue as to whether that standard was met, and the district court correctly granted summary judgment in favor of Liberty Mutual.

## IV. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.